## FELIX v. WESTINGHOUSE RADIO STATIONS, Inc.

No. 10332.

United States District Court
E. D. Pennsylvania.
March 15, 1950.

Thomas D. McBride, Philadelphia, Pa., for plaintiff.

Saul, Ewing, Remick & Saul, Philadelphia, Pa., for defendant.

KIRKPATRICK, Chief Judge.

This is a motion for summary judgment, on the pleadings and affidavits. The action is for libel. The undisputed facts are as follows: In October of 1949 in the course of a political campaign in Philadelphia, centering on the election of candidates for certain municipal offices, William F. Meade, Chairman of the Republican Central Campaign Committee, made two radio speeches from the defendant's station. His theme was that the Democratic Party in Philadelphia, and particularly its candidate for City Treasurer, was supported, and more or less controlled, by a Communist group. The plaintiff, who was not a candidate for office and who is not a Communist, was named as one of the group, in a context which, for the purpose of this decision, will be assumed to be libelous.

In the preceding August the defendant had offered radio time to be used by and on behalf of candidates in the November election to the respective chairmen of the Republican and Democratic Campaign Committees on a basis of fifty per cent each. It has been stipulated that the four Republican candidates for the offices of City Comptroller, City Treasurer, Register of Wills and Coroner authorized the Committee and Mr. Meade to "campaign for their election and, as part of the campaign to contract for the rental of radio facilities and to use defendant's broadcasting station" and it is not disputed that Mr. Meade's speeches were made in time contracted for by the Committee in pursuance of such authorization. A few minutes before each broadcast Mr. Meade delivered to the defendant a typewritten copy of the speech to be broadcast, and the speeches were delivered without change.

In Summit Hotel Company v. National Broadcasting Company, 336 Pa. 182, 8 A. 2d 302, 124 A.L.R. 968, the Supreme Court of Pennsylvania rejected the principle of absolute liability, regardless of fault, of a radio broadcasting station for transmitting libelous matter. In that case the Court held the broadcasting company not liable for an extemporaneous, defamatory remark, not in the submitted script, made in the course of a broadcast. The facts of the Summit Hotel case are, of course, quite different from those now before the Court but that decision unequivocally declares that it is the law of Pennsylvania that a broadcasting station cannot be held for damages for remarks in a broadcast, made by others than its own agents or employees, unless there is fault of some kind upon its part.

The Federal Communications Act, 47 U.S.C.A. § 151 et seq., under which this defendant holds its license provides in Section 315 "If any licensee shall permit any person who is a legally qualified candidate for any public office to use a broadcasting station, he shall afford equal opportunities to all other such candidates for

that office in the use of such broadcasting station * * * Provided, That such licensee shall have no power of censorship over the material broadcast under the provisions of this section. No obligation is hereby imposed upon any licensee to allow the use of its station by any such candidate." If, in view of this Section, this defendant could not have censored Mr. Meade's speech in any way, as by eliminating parts deemed objectionable or by cutting him off the air or by refusing to allow him to make the speech, without violating the law, then it follows that it was without fault in the matter of the broadcast. It goes without saying that no court can for a moment entertain the idea that refraining from doing something which the law forbids can constitute fault and create civil liabilities or that a person is a free agent when it comes to a choice between obeying the law and violating it. This is true entirely apart from any question of incurring a penalty; but the decision of the Federal Communications Commission in the Port Huron case, Docket No. 6987, gives fair notice that any violation of the Act in the matter of censorship of political addresses means, in all probability, loss of the station's license and the consequent extinguishment of its business.

The question then is, could this defendant have censored Mr. Meade's speeches without violating the law. Of course it could have refused to contract for the use of its facilities for political discussion by anyone on either side, candidates and others. Whether such blanket refusal would have raised the question, when its license came up for renewal, that in so doing it was not acting in the public interest is a matter of speculation, but it need not now be considered because the defendant did elect to enter the field, as it had the right to do, and did contract with both political parties on equal terms. Thus the content of the speech in question constituted "material broadcast under the provisions of this section" as to which power of censorship was denied to the defendant.

The plaintiff contends that the provision of the Act which withholds the power to censor political addresses applies only to speeches made by the candidates for office. If this is so then the defendant would have been free, on reading the script submitted by Mr. Meade, who was not a candidate, to blue-pencil it or to refuse it altogether and would have been fairly chargeable with fault had it permitted defamatory matter to go out from its station.

The question is as to the meaning and scope of the word "use" in Section 315. The plaintiff says that this word, rather than "speak over" or some equivalent, was adopted in order to cover transcriptions and rebroadcasting as well as direct speech into the microphone. I do not believe that it can be given so narrow a meaning.

If a candidate for office who authorizes another to make an address in the furtherance of his campaign for office does not thereby "use" the station within the meaning of the law, the purpose of Section 315 fails. That Section manifestly was enacted in order to safeguard one of the most important features of the democratic process, namely, the opportunity of the people who are going to vote for candidates to hear a full and free discussion of both sides of the issues which affect their choice. The election of candidates for office is but the machinery by which the will of the people as to programs and policies is registered and made effective, and what or who the candidate may be is often secondary to what he stands for. Congress was determined that radio broadcasting stations should not become instrumentalities controlled by one group or party by which its own political philosophy and that of its candidates could be carried to the people and all opposing views suppressed. If "use" be given the narrow interpretation for which the plaintiff contends it would be perfectly feasible and legal for a broadcasting station to refuse its facilities to all the candidates, in their own persons, and then allow spokesmen for one side unlimited time, to the total exclusion of all speakers on the other side, thus frustrating the policy underlying the Act and its plain intent.

Judgment may be entered for the defendant.